230 So.2d 623 (1970)
Roland HELMINGER, Plaintiff-Appellant,
v.
COOK PAINT AND VARNISH COMPANY, Defendant-Appellee.
No. 2953.
Court of Appeal of Louisiana, Third Circuit.
January 15, 1970.
*624 Harold J. Brouillette, Marksville, and Charles Gremillion, Bunkie, for plaintiff-appellant.
Sandoz, Sandoz & Schiff, by Lawrence B. Sandoz, Jr., Opelousas, Lewis & Lewis, by John M. Shaw, Opelousas, Watkins, Ryan & Hamilton, by A. J. Watkins, Houston, Tex., for defendant-appellee.
Before TATE, SAVOY, and MILLER, JJ.
TATE, Judge.
The plaintiff Helminger, a painting contractor, alleges his hands were injured by a dangerous chemical in substances furnished him by the defendant, Cook Paint & Varnish Company. He sues Cook in tort.
The trial court dismissed the suit. It essentially held that Helminger had not proved that Cook's products had caused the chemical burns on the hands. The plaintiff appeals.
The primary or threshold issue on appeal is: Did the trial court err in rejecting proof that MEKP, a chemical in Cook's process, caused Helminger's hand *625 injuries?[1] If this question is answered in the affirmative, then we reach the further issues: (1) Was Cook negligent in failing to provide sufficient warning of the dangers of MEKP?, and (b) Is Helminger's recover barred by any contributory negligence on his part?

The Factual Setting
The plaintiff Helminger is a painting contractor. In 1965 he was awarded the painting subcontract in connection with the construction of a nursing home at Opelousas.
Pertinently, the subcontract required the installation of "polyester tile" in certain areas. Polyester tile is applied on wall and other surfaces in liquid form by paint brush, etc. By means of a chemical reaction involving a "catalyst"[2], the solution hardens into a permanent tile. The subcontract specified Cook's Polyester Tile and required Helminger to permit Cook's representative to "completely supervise application" of the tile. Tr. 322.
When the tile was first applied in April 1965, it did not properly harden in many areas. It remained sticky and did not achieve its hard-tile state. Cook's representative so informed its Houston office, which sent out Terry Glen Smith, a chemical engineer, to investigate the cause.
In mid-May Smith came to the construction site in Opelousas. He found that, although the material had been correctly applied by Helminger's crew (in accordance with instructions from Cook's sales representative), it did not set properly due to material defectone of the constituents (cobalt), "promoter" of the reaction, had deteriorated. Smith therefore recommended that Cook bear the expense of a re-application.
On May 30th Smith returned to Opelousas. New materials had been sent. Smith also brought additional supplies of the "promoter" (cobalt napthamate) and of the "catalyst" (MEKP).
He first experimented with small quantities. After several tries, he arrived at a quicker-drying mixturepertinently, it involved using twice as much of the catalyst, MEKP, as well as more of the cobalt promoter (accelerator).
Helminger's crew of three painters then commenced to reapply the polyester tile, under Smith's supervision. (Cook was paying the men and furnishing the materials.)
A new problem arose. The new quick-drying mixture had a "pot life" of 15-30 minutes before it hardened (as compared with a normal pot life of four hours). Therefore, it hardened much sooner on the paint brushes unless they were cleaned in a solvent right away, or at least three or four times during the day (as compared with before). Smith therefore furnished a more efficient brush-cleaner solvent (acetone).
During this re-application process, the plaintiff Helminger himself cleaned the brushes for his painters. He did so by wringing them out in the solvent with his bare hands, then knocking the brush against the side of his canvas shoes. This is a method commonly used to clean brushes used with ordinary painting compounds. Smith was present and observed Helminger cleaning his brushes in this manner, without comment or warning.
*626 Within three days after Helminger became the brush-cleaner for the quicker-drying mixture, the palms of his hands and the inner and top front of his feet became inflamed and blistered.
The medical diagnosis is that the condition was a contact irritant dermatitisan inflammation (burning) produced by contact with an irritant chemical. The plaintiff Helminger contends that the irritant chemical was the MEKP catalyst, added by Smith's direction to the polyester tile in double the usual proportion.

MEKP, the Suspected Culprit
MEKP is a "catalyst" (see Footnote 2) furnished by Cook for application of its polyester tile. For each gallon of tile, a little (1½-ounce) plastic bottle of MEKP is furnished. Addition of the MEKP to the polyester tile resin commences the chemical reaction which ends in the hardening of the resin into tile. In the process, the MEKP is used up and its constituents become part of the hardened tile.
MEKP is the symbol for the chemical involved, Methyl Ethyl Ketone Peroxide. The "peroxide" indicates that the compound contains additional oxygen atoms.
It is the release and combination with other components (or the oxidizing) of this excess oxygen component which aids in transforming the liquid resin into the hardened tile. The MEKP is the agent which causes this reaction to take place. (However, if flesh is exposed to MEKP, a similar oxidizing action causes the excess oxygen to burn away a component of the fatty part of the flesh.)
Cook's experts did not deny that MEKP is an extremely caustic substance likely to produce serious burns if permitted contact with the human skin. In the answer to discovery interrogatories, Cook also admitted this.
In these answers, introduced into evidence, Cook itself describes MEKP as follows: "* * * a very strong oxidizing agent and is highly toxic in all respects. When in contact with the skin for only minutes, it produces a deep, painful and long-lasting burn which is very difficult to cure. * * * Contact with skin can produce a severe burn in a matter of minutes unless removed immediately by washing with large amounts of water. Such a burn is deep, painful, very difficult to cure and slow to heal." Tr. 29, 2d page of exhibits.

Could MEKP Be Cause-in-Fact of the Plaintiff's Injuries?

The trial court rejected MEKP as the cause of the plaintiff Helminger's injuries. Our trial brother stated that the evidence shows that MEKP "could, if brought in contact with the skin in its pure form, cause an immediate rash or burn. The plaintiff did not receive an immediate rash or burn * * *. If the MEKP caused the injury, it could only do so in its pure form before being mixed."[3] Tr. 48.
In so holding, the trial court accepted the positive and unequivocal testimony of Cook's two expert witnesses to this effect. They were: Terry Smith, a chemical engineer, and Cook's technical service representative at the time of the painting subcontract; and Clark Niss, a chemist, Cook's product manager for polyesters.
We originally inclined to the view that the manifest-error principle prevented us from denying determinative weight to the testimony of these two employees of the defendant Cook. However, upon reflection and aided by certain frank admissions in *627 the testimony of these two chemical experts , we have concluded that it is a medical, rather than a purely chemical, question whether MEKP in diluted form, as here, could produce the chemical burns from which the plaintiff Helminger suffered, as well as whether such burns must appear immediately or could, as here, manifest themselves two-three days later.
The defendant's experts themselves so indicated. In his discovery deposition, Cook replied, "I am not a medical doctor", when asked: "Ordinarily, how long after the application, or the contact with this chemical, would the injury result or manifest itself?" Tr. 517.
Likewise, Niss admitted that he had made "No investigation as to the length of time a chemical burns" (with reference to whether it would take three days or not for the burn to manifest itself), and had "no experience" as to the question, but that his opinion was based solely on literature concerning the use of and contact with chemicals, "not from a medical profession" study or point of view. Tr. 447.
We therefore find that medical expert opinion is of more weight than the testimony of these chemist witnesses as to MEKP's causation of chemical burns on the human skin.
In this regard, we find uncontradicted the testimony of the only medical expert testifying, Dr. Henry Jolley, a board certified dermatologist, and professor of dermatology at the LSU School of Medicine.
The doctor was questioned as to whether an immediate burn reaction should have taken if contact with MEKP in much-diluted form took place through the brush-cleaning process above-described. He replied unequivocally: "* * * in irritant dermatatis [such as here diagnosed] reaction can vary from instant to many days, depending on the nature of the irritant, the concentration of irritant and the so-called susceptibility or irritability or thinness of the skin * * *."[4] Tr. 128. This accords also with a reasonable construction of the evidence as a whole.
We therefore find that the MEKP in diluted form, (i.e., in the brush-cleaning process) could produce the chemical burns which the plaintiff Helminger suffered some two-three days after he commenced washing the brushes in the solvent. We thus disagree with the trial court's acceptance of Cook's employee's supposition that an MEKP burn could have been produced only immediately by contact with the chemical only in its pure form.

Was Cook's MEKP the Cause-in-Fact of the Plaintiff's Burns?

We have found that the MEKP could have caused Helminger's burns. The next issue is whether it did.
The circumstances indicating MEKP-causation are as follows:
1. MEKP is a highly caustic substance, and it was the only ingredient of this nature to which Helminger was exposed immediately preceding his burns. Furthermore, Cook's expert, Smith, had doubled the amount of MEKP catalyst normally used, to 3 ounces per gallon, which was 50% over the maximum (two ounces) recommended.
2. The additional MEKP and also cobalt-accelerator had greatly increased the oxidizing reaction, oxidizing being the process by which the excess MEKP oxygen "burned'. (Because of this, the polyester resin hardened in 15-30 minutes instead of 4 hours, and it was necessary to clean the brushes frequently to prevent the hardening tile from making them useless.)
3. All other elements in the polyester tile compound and in the solvents were eliminated as able to cause the chemical burns sustained by plaintiff. (They could have caused the burns, if he had been unusually *628 susceptible to such other chemicals. However the uncontradicted evidence is that no such unusual susceptibility had shown up in his thirty-odd years of painting and that his burns were caused by irritant-contact rather than by an allergic reaction. Cook relies upon an isolated statement of Dr. Jolley's that Helminger was unusually susceptible, Tr. 214, but the doctor later explains he meant Helminger was now susceptibleafter receiving these burnsbut that he had not been before the incident. Tr. 222, 223-24.)
4. The symptoms of the burns appeared very shortly (two-three days) after MEKP in greatly increased proportion was used to expedite the hardening process. Further, the pattern of the burns is consistent with the plaintiff's repeated hand and foot contact with the brushes with possible-probable MEKP residue.
5. The medical diagnosis indicated that MEKP causation is likely.
Cook, on the other hand, contends that the MEKP was so diluted or dissipated by the time the brushes were cleaned as to be non-toxic. Cook's employee-experts point out that the 1½-ounce MEKP catalyst contained the chemical in only 57% dilution, that 3 ounces comprised only 2.5% by volume (Tr. 413) when poured into the gallon of polyester resin, and that 95% (their estimate) of this MEKP had been dissipated into the reaction by the time the tile-resin jelled so as to require cleaning of the brusheswith this residue yet further diluted when the brush was dipped in the solvent.
Nevertheless, as both their testimony and that of the plaintiff's experts shows, the MEKP is still contributing to an oxidizing process until such time as the chemical reaction (polymerization) is completed which results in the hardened tile. (Polyester tile, when polymerized, is a thermoset plastici.e., one which, once set, is insoluble and cannot be softened by reheating.) No matter how small in percentage, so long as the resin was not fully hardened, some oxidizing MEKP was presentto which, repeated hand-dipping and brush-wringing throughout two-three days might, under the medical evidence, constitute sufficient contact to cause the burns here sustained.
Considering all of the circumstances, and in the absence of any other plausible explanation, we find that the most probable cause of Helminger's chemical hand and foot burns was his repeated exposure to MEKP residue in the brush-cleaning operations. This sufficiently proves that the MEKP exposure was the cause-in-fact of the plaintiff's injuries, for proof is sufficient to constitute a preponderance of the evidence when as a whole it shows that the event or causation sought to be proved is more probable than not. Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276; Naquin v. Marquette Casualty Co., 244 La. 569, 153 So.2d 395; Hall v. State, La.App.3d Cir., 213 So.2d 169, 175; Sanders, The Anatomy of Proof, 28 La.L.Rev. 297 (1968).
We were given some pause by the plaintiff's failure to call the initial treating physicians and the unfavorable inference to be drawn therefrom. However, whatever unfavorable inference might be drawnand the plaintiff was misinformed as to the nature of the polyester process and as to the substances involved when he reported to them, we have concluded that it does not outweigh the convincing testimony proving that contact with Cook's MEKP was the cause-in-fact of the plaintiff's injuries.

The Negligence and Contributory Negligence Issues
Under the circumstances shown, Cook's negligence was the proximate cause of the plaintiff's chemical burns, and no contributory negligence on his part bars his recovery. In this respect, the following principles are pertinent:
(1) Negligence is conduct which creates an unreasonable risk of foreseeable harm to others; in determining whether *629 the risk created is unreasonable, consideration is given, inter alia, to the extent or gravity of the harm threatened by the conduct. Allien v. Louisiana Power & Light Co., La.App.3d Cir., 202 So.2d 704; Restatement of Torts Second, Sections 284, 291-293.
(2) Contributory negligence is conduct by the plaintiff which involves unreasonable likelihood of harm to self. Sloan v. Flack, La.App.3d Cir., 150 So.2d 646; Restatement of Torts Second, Section 463. In this respect, a person with no actual or implied knowledge of a danger is entitled to rely on those who have a duty to protect his safety. Allien v. Louisiana Power & Light Co., cited above, at 202 So.2d 712.
Under present facts, Cook and its employee Smith are charged with actual or imputed knowledge of the propensities of MEKP, an ingredient in the process furnished and directed by it. The evidence shows that MEKP is a highly caustic chemical involving substantial risk of serious personal injury upon contact with human flesh, whether the chemical be in pure or in diluted form.
Cook through its employee Smith was in complete charge of the re-application process. Smith directed the plaintiff and his employees to use increased portions of MEKP and a mixture with greatly accelerated oxidizing (also more dangerous to human flesh), without warning of the increased risk. Because of its superior knowledge and its control of the enterprise, Cook through Smith was under a duty to warn of the increased hazard resulting from its altering the usual process.
Cook's supervisor (Smith) observed Helminger utilizing a normal brush-cleaning process. The supervisor Smith nevertheless did not warn or otherwise caution Helminger that prolonged exposure to repeated contact with the MEKP residue might subject Helminger to severe chemical burns. (The plaintiff's experts testified that routine safety precautions included the recommendation that polyethylene gloves be worn to avoid the possibility of even diluted contact with MEKP.)
On the other hand, as Cook through its employees knew, Helminger had no experience whatsoever with the polyester tile-catalyst process or MEKP. (This was a relatively new tile application process in the area. This was one reason that the subcontract specified that Helminger subject himself to Cook's complete supervision in the application.)
The small plastic container containing the MEKP solution identified it only as "catalyst". It did not specify its chemical content or its exceptionally dangerous characteristics. The label simply cautioned to avoid contact with the skin or eyes.
Thus Helminger was properly relying upon the control and superior knowledge of Cook through its supervisor Smith in undertaking reapplication of the quicker-drying materials. He was not aware that such materials contained a highly caustic substance (MEKP) in quantities which now made unsafe the usual brush-cleaning method; for the use of the method involved intermittent contact with the polyester residue on the brushes at much greater frequencies than with a normal mixture.

Quantum
About three days after the plaintiff Helminger commenced cleaning the brushes of the MEKP-enriched solution, the palms of his hands and then the remaining skin of his hands and fingers first commenced itching, then started swelling and cracking, then blistered. To a lesser degree, his feet were similarly affected.
Home cures being unsuccessful, he undertook treatment from an Alexandria doctor, then from Dr. Jolley, a dermatologist in Baton Rouge.
The testimony of Dr. Jolley, verified by the lay evidence, shows that Helminger's *630 hands remained afflicted by this severe acute dermatitis for approximately eight months, that the condition gradually cleared thereafter (although associated with discomfort and continual reoccurrences), until finally on January 20, 1968 (2½ years after burns) Helminger was discharged as cured. Following this last day, there is a minimal chance of reoccurrence due to increased sensitivity.
During the initial 8-10 month period Helminger was substantially deprived of the use of his hands. (His wife had to shave and bathe him, help him eat, handle a pencil and do his figuring for him, etc.) During this period, he suffered from continuous pain and discomfort, relieved only with narcotics. He was required to sleep with gloves on.
During the major part of the two-year treatment, the plaintiff was required to wash his hands with boric acid solutions several times a day and thereafter to apply an antibiotic cream. He had to avoid exposing his hands to soap, all chemicals, and to avoid any contact with painting supplies.
Helminger is undoubtedly entitled to a substantial award of general damages for these painful injuries which incapacitated him from many of the ordinary activities of life for so long a period, and for the continuous pain and discomfort endured.
The plaintiff also suffered special damages. He produced medical bills for doctor's visits of $309, and additionally was required (according to his and the attending physicians' testimony) to obtain medicational supplies (salve and boric acid wash) constantly over the period.
The record reflects he made 42 trips from his home to Baton Rouge (Dr. Jolley), a round-trip of 180 miles each time at an estimated cost of 7¢ per mile. The plaintiff states he was required to obtain medication after each visit to a doctor (55 visits in all, verified by record), at an estimated cost of $5-$8 for each supply. This was not erified by receipts, however.
The plaintiff Helminger also testified that, since he was unable to paint or assist his crew during this extended period, he felt his earnings from his painting-contracting business had fallen. The income tax returns did not, however, prove any reduction in earnings. In the absence of other evidence, we must regard this item of claimed damages as not proven.
Taking all of these circumstances into consideration, we think an award of ten thousand dollars will adequately compensate the plaintiff Helminger for all general and special damages sustained.

Decree
For the foregoing reasons, we reverse the judgment of the District Court dismissing this suit, and we grant judgment in favor of the plaintiff, Roland Helminger, holding the defendant, Cook Paint & Varnish Company, liable to him in the sum of Ten Thousand and no/100 ($10,000) Dollars, together with legal interest thereupon from date of judicial demand until paid. The said defendant is taxed with all costs of these proceedings and of this appeal.
Reversed and rendered.
NOTES
[1] On appeal, the plaintiff Helminger abandons contentions that other chemicals furnished by Cook may have caused the contact irritant dermatitis, i. e., the chemical burn resulting from contact with an irritant.
[2] Within the polyester tile trade, the substance causing the reaction is denoted a "catalyst", even though actually its composition is changed because its constituents take part in the reaction. (Chemically, a true catalyst accelerates or retards a reaction without changing its own substance.) The "catalyst" furnished for Cook's Polyester Tile is the chemical MEKP, of which, more in the text below.
[3] The written reasons further observed that if the plaintiff had received an immediate burn from MEKP, he would be barred by contributory negligence for failing to observe the caution on the MEKP container to avoid contact with the skin. Since the evidence excludes any immediate burnrather the development of the irritation and blistering 2-3 days later, this observation is immaterial for present purposes.
[4] Another witness for the plaintiff, a chemical engineer from an independent testing laboratory, testified to a similar opinion.