CULPEPPER, Judge.
Plaintiff seeks damages for the deaths of his IS cattle by arsenic poisoning. He named as defendants (1) his neighbor, James Gore, who allegedly sprayed his fence line with a weed killer containing arsenic, (2) the Missouri-Pacific Railroad Company which allegedly gave the weed-killing compound to Gore, their employee, without warning as to its deadly nature, (3) R. H. Bogle Company, which had the contract with the railroad company to spray its right of way with weed killer, and whose employees allegedly gave the poison to Gore without warning as to its dangerous qualities, and (4) United States Borax & Chemical Corporation, manufacturer of the weed killer, who allegedly failed to give adequate warning.
Plaintiff voluntarily dismissed his suit against the Missouri-Pacific Railroad Company. The district judge dismissed U. S. Borax & Chemical Corporation on a rule for judgment on the face of the pleadings, and plaintiff has not appealed from this ruling. Hence, these two defendants are no longer involved.
The case was tried on the merits against defendants James Gore and R. H. Bogle Company, resulting in judgment only against Gore. The defendant Gore appealed. Plaintiff also appealed, seeking judgment additionally against R. H. Bogle Company.
THE GENERAL FACTS
The general facts are that James Gore worked as a brakeman for the Missouri-Pacific Railroad. He was assigned to a train being used to spray the right of way with weed killer. The railroad had a contract with R. H. Bogle Company to furnish the spray and operate the tanks, pumps and other equipment necessary for the operation. One morning before work started, Gore obtained about one gallon of the weed killer and took it home in a plastic milk carton.
Gore lives in a rural area in the hill country of Grant Parish which is “open range”, i. e., cattle lawfully roam at large. He has a small home on about one acre of land enclosed by a fence. Several months after obtaining the weed killer, he sprayed *260 it on the grass along his fence. Gore contends he only sprayed inside the fence, but grass samples taken from both inside and outside showed some had been sprayed outside.
Shortly thereafter, plaintiff’s cattle, which ranged in the area to the knowledge of Gore, were found dead in and around Gore’s yard. Laboratory tests of tissue from the animals showed they died of arsenic poisoning. Samples of the grass which had been sprayed inside and outside the fence showed the chemical compound contained arsenic.
GORE’S NEGLIGENCE
. Essentially, the reasoning of the district judge in finding Gore negligent was that he knew plaintiff’s cattle grazed in the area, and he sprayed the grass both inside and outside his fence with the chemical which Gore knew or should have known might be harmful to these animals.
Negligent conduct is that which creates an unreasonable risk of foreseeable harm to others. But there is no fixed rule for the determination of what is negligent conduct. The facts of each case must he considered. See Helminger v. Cook Paint & Varnish Company, 230 So.2d 623 (La.App., 3rd Cir. 1970) ; Allien v. Louisiana Power & Light Company, 202 So.2d 704 (La.App., 3rd Cir. 1967).
In the recent similar case of McVay v. Fireman’s Insurance Company of Newark, N. J., 264 So.2d 740 (La.App., 3rd Cir. 1972) the defendants dumped sweepings from the floor of a seed company in an area where plaintiff’s cattle grazed. The sweepings contained seed rice which had been treated with mercury poison. Plaintiff’s cattle ate the rice and died. Defendant Malone was held liable since he knew the rice was poisonous and admitted dumping it in the area which he knew was used by plaintiff as a pasture. However, defendant Adams was held free of negligence since he only furnished the truck in which the rice was hauled and did not know of its dangerous nature.
In the present case, the most serious issue is whether the risk was reasonably foreseeable by Gore. He contends he did not know, and had no reason to know, that this chemical compound was dangerous to cattle. We are inclined to agree that he had no actual knowledge of the hazard, since there is nothing in the evidence to show that Gore intended to harm plaintiff’s cattle. But we find no manifest error in the conclusion of the trial judge that Gore at least should have known the substance might be harmful to cattle. Coupled with the fact that Gore knew this chemical was being used to kill vegetation on the railroad right of way, the evidence shows that a warning was stamped on the tanks stating that it was harmful to children, pets and animals. Although a Bogle Company employee testified there are weed-killing chemicals which are not harmful to cattle, Gore should at least have foreseen that this substance might be harmful to such animals.
Having reached the conclusion that Gore should have known the substance was harmful, it is clear that he created an unreasonable risk of foreseeable harm by spraying it on grass where plaintiff’s cattle customarily grazed.
Defendant Gore also argues that his fence was in good condition and that he sprayed the chemical only inside the fence, where plaintiff’s cattle could not have reached it. However, the evidence amply supports the finding of fact by the trial judge that actually Gore sprayed both inside and outside the fence. Furthermore, the evidence shows that Gore’s fence was in such a bad state of repair that the cattle could graze on the inside. Actually, one of the dead cows was found inside Gore’s yard.
*261 LIABILITY OF R. H. BOGLE COMPANY
Both plaintiff and defendant Gore contend the chemical was obtained from an employee of Bogle Company who failed to give any warning to Gore as to its dangerous qualities. Gore testified that one morning before daylight, while waiting for the entire work crew to arrive, some unidentified person filled his empty milk carton from a valve on the tank. He did not know whether it was a Bogle employee. However, there was other testimony that the chemical could not be withdrawn from the tank except from an opening at the top. In written reasons for judgment, the trial judge stated he “has grave doubts of the truth of Mr. Gore’s statement and feels that he took the compound without the knowledge of R. H. Bogle Company.” We find no error in this conclusion of fact.
Next it is contended that Bogle Company was negligent in failing to take proper precautions to store and guard this dangerous substance. The evidence shows that the chemical was kept in a railroad tank car, which was under the care and custody of the railroad after working hours. Gore says he obtained the compound before work started. Furthermore, the evidence shows there were warning signs on the sides of the tank stating that its contents were poisonous and harmful to children, pets and animals.
The trial judge correctly found R. H. Bogle Company free of negligence.
QUANTUM OF DAMAGES
Defendant Gore contends plaintiff did not prove the damages of $2,080 awarded for the 15 head of cattle. The evidence consisted of a list prepared by plaintiff of the animals with their weights. Also introduced were daily cattle market reports showing the prices received for cattle in the area. We find the evidence amply supports the award.
For the reasons assigned, the judgment appealed is affirmed. All costs of this appeal are assessed against the defendant, James Gore.
Affirmed.