282 So.2d 724 (1973)
Religh C. CHRISTY, Plaintiff-Appellee,
v.
CITY OF BATON ROUGE, Defendant-Appellant.
No. 9481.
Court of Appeal of Louisiana, First Circuit.
August 23, 1973.
Rehearing Denied September 26, 1973.
Writ Refused November 21, 1973.
*725 John R. Sheppard, Asst. City Parish Atty., Baton Rouge, for defendant-appellant.
H. A. Brumfield, III, Baton Rouge, for plaintiff-appellee.
Before SARTAIN, BLANCHE and WATSON, JJ.
SARTAIN, Judge.
Plaintiff, Religh C. Christy, instituted this suit against the City of Baton Rouge for damages for personal injuries sustained by him as the result of an incident which occurred on September 4, 1967, at the Vel Rose Motel in the City of Baton Rouge. Judgment was rendered by the trial court in favor of plaintiff awarding him general damages in the amount of $12,000.00, damages for loss of wages in the amount of $1,600.00, and special medical damages in the amount of $1,651.12. From this judgment the City of Baton Rouge has appealed and plaintiff has answered the appeal seeking an increase in the damage awards. We amend and affirm.
*726 The facts show that on September 4, 1967, Sergeant Abrom Hoover, a Baton Rouge City Police officer, was working extra duty at Hopper's Drive In Restaurant which is located on Airline Highway across the street from the Vel Rose Motel. Between 6:30 and 7:00 p. m. Sergeant Hoover was summoned by someone at the motel to come over because there had been a shooting on the premises. Sergeant Hoover left Hopper's Drive In and proceeded across the street to the motel. When he arrived Sergeant Hoover saw several persons scuffling in the motel driveway, which separates the motel office from the Vel Rose Motel bar and lounge. As he approached the group Sergeant Hoover witnessed Lloyd Ingles strike a Mr. Porche in the mouth with his fist. Sergeant Hoover moved the entire group of men, estimated as being less than a dozen in number, into the motel office where the man who had been shot, a Mr. Joseph Edward Nichols, had already been taken. Sergeant Hoover testified that Ingles continued to act in a belligerent manner and wanted to continue to fight. Sergeant Hoover stated that he had to physically push Ingles into a chair at least twice to keep him down while in the motel office.
Once he had taken the whole group into the motel office Sergeant Hoover summoned plaintiff, with whom he was acquainted, from Hopper's to come over to the motel and assist him in keeping order until more officers could be summoned to investigate the shooting. When plaintiff came into the office Hoover gave him his "night stick", deputized him, and told him to keep the group in the office by force if necessary. Plaintiff stood in the office door while Sergeant Hoover looked after the injured man. Plaintiff stated that during this period Ingles was continually belligerent and wanted to resume his fight with Porche.
Soon additional police officers, at least four in number, arrived on the scene. Plaintiff went outside and found the gun that had been used in the shooting in some bushes. He came back inside and gave the gun to Sergeant Hoover. At this point Ingles told plaintiff that he would "get him" for finding the gun. Shortly thereafter, as the police were preparing to take the group downtown to continue the investigation, Ingles walked up to plaintiff, who was talking to one of the police officers, and struck him in the face. Plaintiff sustained two fractures of his nose and displacement of his front teeth as a result of this blow. It was only after plaintiff was struck that Ingles was subdued and handcuffed. Ingles was then taken downtown and booked on charges of simple battery and resisting arrest.
Sergeant Hoover testified that when the group was taken into the motel office he considered Ingles to be in custody and under arrest on a charge of simple battery for striking Porche. Hoover stated that because of Ingles' repeated attempts to get up and continue fighting while in the motel office he also was charged with resisting arrest. Hoover at no time placed handcuffs on Ingles even though he was carrying handcuffs on his uniform at the time.
Ingles was described as a big man who probably weighed over two hundred pounds. Several of the officers, including Sergeant Hoover, testified that they knew Ingles by reputation and that he had a long history of trouble with the law.
After receiving proper legislative authority, plaintiff filed suit against the City of Baton Rouge on October 16, 1968. Following a trial on the merits the district court rendered judgment holding defendant liable for the injuries sustained by plaintiff on the grounds that the police officers were negligent in failing to subdue and handcuff Ingles when he was taken into custody prior to his attack upon plaintiff.
On appeal defendant contends that the trial court erred in holding the City liable for the failure of the police officers to subdue and handcuff Ingles and argues that the only person responsible for plaintiff's injuries is Ingles.
*727 In view of the circumstances surrounding this incident we find that the trial court was not in error in holding that the police officers were negligent in not properly restraining Ingles.
The circumstances that impress us can be summarized as follows:
First, Sergeant Hoover and Officer John Dozier both indicated in their testimony that it is normal police procedure to handcuff suspects when they are arrested. Ingles was not handcuffed until after he struck plaintiff even though Sergeant Hoover stated that he had seen Ingles commit a battery upon the person of Mr. Porche and intended to charge him with that offense.
Second, when Sergeant Hoover arrived at the motel he saw Ingles strike Mr. Porche and throughout his confinement in the motel office Ingles acted in a threatening manner.
Third, during the confinement in the motel office Sergeant Hoover had to physically push Ingles into a chair on at least two occasions and on this basis Sergeant Hoover charged Ingles with resisting arrest.
Fourth, during the period of time plaintiff was guarding the doorway of the office Ingles repeatedly called plaintiff a "punk" for aiding Sergeant Hoover.
Finally, when the gun was retrieved Ingles boisterously threatened plaintiff that he would "get him" for finding the gun.
It has been stated that negligent conduct is conduct which creates an unreasonable risk of foreseeable harm to others. Eubanks v. Gore, 269 So.2d 258 (3rd La.App. 1972). It has also been held that the failure to take a particular precaution to guard against injury to another in connection with a risk constitutes negligence when it appears that such precaution would have been undertaken by a reasonably prudent individual under the circumstances. Pitre v. Employers Liability Assurance Corporation, 234 So.2d 847 (1st La.App. 1970). Of course, negligent conduct can only be determined in the light of the facts and circumstances presented in each particular case.
We find that in the case at bar the actions and words of Ingles throughout the period of time he was in custody in the motel should have indicated to Officer Hoover and the other officers present that he was dangerous and their failure to properly subdue and restrain him was negligent conduct which resulted in plaintiff's injuries. Therefore, we agree that the finding of negligence by the trial court under the circumstances presented is not erroneous.
We now turn to the question of damages. Defendant seeks a reduction of the awards made for general damages, special medical damages, and lost wages. Plaintiff, by answer to defendant's appeal, seeks an increase in the awards by the trial court for general damages and lost wages.
Our review of the record discloses that following the incident plaintiff was taken to the emergency room of the Baton Rouge General Hospital. He was seen by Dr. C. A. Meng. X-rays were made and revealed a fracture of the distal portion of the nasal bones, a fracture of the left infraorbital ridge with extension of the maxillary sinus and involvement of the left zygoma at its junction with the maxillary bone, and also a fracture of his front teeth.
Dr. Meng referred plaintiff to Dr. R. J. Coe, an otolaryngologist. On September 13, 1967, Dr. Coe performed restorative surgery on plaintiff's nose in order to restore the normal nasal contour. Plaintiff was hospitalized for four days in Our Lady of The Lake Hospital for this surgery. Plaintiff testified he was off work for three weeks to a month following this surgery.
Plaintiff continued to see Dr. Meng until February 1, 1968, with complaints of headaches and pain in his left eye. He was referred to Dr. Conrad Gregory, an ophthalmologist. Dr. Gregory saw plaintiff on February 16, 1968 but found no evidence *728 of any ocular involvement as a result of the injury to his face.
Plaintiff was again seen by Dr. R. J. Coe on August 9, 1968 due to his continued complaints of headache pain. He was given medication for the headaches but returned on August 16, 1968 with no relief. Dr. Coe was unable to give a diagnosis for plaintiff's continued complaints. Dr. Coe saw plaintiff again in November of 1971 and in a report dated November 23, 1971 stated that his examination at that time showed a slight irregularity of the nasal, septum and some sinus congestion of the turbinate tissues. However, Dr. Coe stated in this report that plaintiff's complaints of headache pain and nasal congestion at this time should not be related to the fracture displacement.
On February 4, 1972 plaintiff was seen by Dr. Gerald F. Joseph, an otolaryngologist. Plaintiff was still complaining of headaches and sinus congestion. Dr. Joseph stated that his examination indicated a definite nasal deformity in that the nose was not properly aligned and there were heavy scar tissue adhesions between the septum inside the nose and the lateral wall of the turbinate. Dr. Joseph felt the adhesions had been caused by the initial injury plaintiff received to his nose and these adhesions then caused plaintiff's sinus problems. Dr. Joseph recommended surgery to realign the nose and remove the adhesions. Plaintiff was hospitalized in Our Lady of The Lake Hospital from February 23, 1972 to February 29, 1972. On February 24, 1972 Dr. Joseph performed surgery on plaintiff's nose. He reconstructed and realigned plaintiff's nose and cleared the scar tissue adhesions from the nasal passages. Dr. Joseph stated that plaintiff was disabled for about three weeks following this surgery and when he last saw plaintiff in August of 1972 his sinus condition had completely cleared and his nose was in good shape.
Concerning the injuries to plaintiff's teeth, the record shows that he was seen by Dr. J. R. Whitehead, a dentist, on September 19, 1967 and his examination revealed several loose and displaced teeth. The teeth did not close normally in the front and Dr. Whitehead equilibrated the upper right central and lateral as well as the lower right central and lateral teeth to correct this problem. This procedure was repeated on September 22, 1967 and apparently plaintiff has experienced no further trouble with his teeth.
Plaintiff seeks an increase in the award of $12,000.00 general damages for pain and suffering made by the trial court, while defendant seeks a reduction. The evidence shows that plaintiff was hospitalized twice for surgery on his nose. He suffered some pain and discomfort for a period of almost four and one-half years due to the injuries he received. In view of the much discretion vested in the trial court in assessing the damages to be awarded in tort suits, we find the award made by the judge a quo to be neither inadequate nor excessive, and affirm the same.
As to the amount awarded for special medical damages, the trial court itemized the award in written reasons for judgment as follows:
"Plaintiff is entitled to recover special damages as follows:

 Dr. Gerald F. Joseph $ 710.00
 Dr. J. R. Whitehead 18.00
 Drugs 38.34
 Dr. Gregory 15.00
 Dr. R. J. Coe 179.00
 Dr. C. A. Meng 59.00
 Our Lady of The Lake Hospital 449.33
 Baton Rouge General Hospital 28.00
 Our Lady of The Lake Hospital 154.45
 ___________
 Total $ 1,651.12"

Defendant contends that the medical expenses incurred in connection with plaintiff's visits to Dr. Joseph and the surgery performed by Dr. Joseph should not be included in the award. This contention is based upon the reports of Dr. Coe which indicate that in his opinion plaintiff's complaints of sinus congestion and headaches in 1971 were not related to his nose injury in 1967.
*729 Dr. Joseph stated that it was his opinion that the blow to plaintiff's nose caused the adhesions in his sinus cavity which in turn resulted in the sinus congestion he was experiencing in 1972 when plaintiff was first seen by Dr. Joseph. Dr. Joseph testified that plaintiff's nasal difficulties cleared completely following the surgery in February of 1972. Plaintiff also testified that it was only after Dr. Joseph did the reconstructive surgery that he began to feel well again.
Clearly, the trial court accepted the diagnosis and opinion of Dr. Joseph that the problems plaintiff continued to experience until after the 1972 operation were related to the initial fractures of his nose sustained in the 1967 incident. We find no manifest error on the part of the trial court in accepting the opinion of Dr. Joseph over that of Dr. Coe. Therefore, the award of special medical damages is affirmed.
Defendant also contends that the award made for lost wages is excessive. Plaintiff asserts that the award should be increased.
Concerning this award the trial court stated:
"The Court feels that it is somewhat difficult to accurately assess plaintiff's claim for loss of wages resulting from this injury, but does feel that he was disabled for some several months immediately after the accident and for three weeks after his last surgery. He was making $4.78 an hour immediately after the accident and $7.42 an hour when surgery was performed. An award of $1,600.00 will do substantial justice for plaintiff's loss of wages."
Plaintiff's testimony concerning the amount of time he lost from work due to his injury was not specific. Dr. Joseph did state that following the surgery on February 24, 1972 plaintiff was disabled for about three weeks.
It has been held that where there is a legal right to recover damages for lost wages but the damages cannot be exactly estimated, the courts have reasonable discretion to assess the amount based upon the facts and circumstances of the case. Jordan v. Travelers Insurance Company, 257 La. 995, 245 So.2d 151 (1971). In accordance with this rule we find no error in the award of the trial court for lost wages.
Defendant also contends that the trial court erred in awarding legal interest on the various awards from October 15, 1968. Defendant argues that legal interest from October 15, 1968 should not be allowed on the varying items of damages which arose in 1972. With this contention we agree.
The general principle is that all debts bear interest from the time they become due, unless otherwise stipulated. La.C.C. Art. 1938. In our view the award of legal interest from October 15, 1968 on plaintiff's medical expenses and loss of wages incurred in 1972 has the effect of permitting plaintiff to recover interest on these expenses long before the debts were ever incurred. Therefore, the judgment of the trial court must be amended to reflect an award of legal interest on the following items of damage totaling $2,074.73 only from February 24, 1972, the date on which Dr. Joseph performed surgery on plaintiff's nose:
(1) Dr. Joseph's bill of $710.00 dated February 24, 1972;
(2) Baton Rouge General Hospital bill of $25.00 for x-rays performed at the request of Dr. Joseph on February 4, 1972;
(3) Our Lady of The Lake Hospital bill of $449.33 dated February 28, 1972; and
(4) That portion of the award of damages for loss of wages incurred as a result of plaintiff's disability following his hospitalization in February of 1972 in the amount of $890.40 (figured at the rate of $7.42 per hour for three weeks). In addition, the judgment of the trial court awarding legal interest on the remaining items of damages will have to be amended to reflect that the legal interest will be due only from October 16, 1968, the date on which suit was actually filed, instead of October 15, 1968.
*730 Accordingly, for the above reasons, the judgment of the district court is amended to provide legal interest on the amount of $2,074.73 to run from February 24, 1972, until paid. The judgment is further amended to provide legal interest on the remaining amounts awarded as damages from October 16, 1968. In all other respects said judgment is affirmed. Defendant is cast for all costs permitted by law.
Amended and affirmed.