95 So.2d 209 (1957)
Charlie A. BLADES et al.
v.
SOUTHERN FARM BUREAU CASUALTY INSURANCE COMPANY.
No. 4378.
Court of Appeal of Louisiana, First Circuit.
May 2, 1957.
Rehearing Denied June 4, 1957.
Writ of Certiorari Granted October 8, 1957.
*210 Grover L. Covington, Kentwood, for appellants.
Adams & Reese, New Orleans, H. H. Richardson, Bogalusa, for appellee.
LOTTINGER, Judge.
This is a suit by Charlie A. Blades, individually and on behalf of his minor children, Rex Blades and Juan Blades, and by Tink Oliver, individually and on behalf of his minor child, Sammy Oliver, for physical and property damages resulting from an accident on or about March 22, 1955, between the Blades automobile and an automobile insured by the Southern Farm Bureau Casualty Insurance Company. The defendants filed exceptions of res adjudicata, estoppel and no right or cause of action. Said exceptions were based on alleged releases executed by the petitioners. The Lower Court rendered judgment maintaining the exceptions and dismissing the petitioners' suit.
The facts show that the accident occurred on March 22, 1955. On April 1, 1955, the petitioners executed acts of final release in settlement of claim. Shortly after signing said releases, the petitioners were paid drafts in the following amounts:

Rex Blades $ 10.00
Juan Blades 75.00
Sammy Oliver 10.00
Charlie A. Blades, Mrs. Charlie
A. Blades and Tink Oliver 250.00

The said drafts were dated April 1, 1955 and were cashed by the petitioners on April 5, 1955. On the reverse side of said drafts is the following wording:
 "Release and Endorsement
 Read before Signing"
Following said wording is more wording to the effect that endorsement of said drafts shall constitute a full and complete release from any injuries or damages resulting from the accident. Of course, the release form executed by the petitioners is a full and complete release of any damages and injuries which resulted from the said accident.
The evidence discloses that both petitioners are able to read and write. In spite of this fact, however, the petitioners claim that the releases were obtained through error and fraud, they basing their contention on their claim that the insurance adjuster told them that the releases were only for property damages and for travel expenses to and from the doctor's office. They claim that the adjuster specifically told them that even though they signed the releases, they would still have their right of action for personal injuries.
The Lower Court awarded judgment in favor of the defendant and dismissed petitioners' action. The decision of the Lower Court was based on the decision of this Court in Thompson v. Kivett & Reel, Inc., *211 25 So.2d 124, wherein, under a similar situation, we held that a party who was able to read and write is charged with having read that which he could easily have read, and in which case we upheld the act of release.
We see no substantial difference between the present case and the Thompson case which would justify us in making a different decision. Assuming that the adjuster did tell the petitioners that they were not releasing their rights for personal injuries, we feel that the petitioners should have read what they were signing, and not merely rely upon the assurance of a total stranger. We do not mean to say that the adjuster did make such assurances, as the evidence is very conflicting on this score, and the Lower Court evidently believed the adjuster's side of the story.
Article 3078 of the LSA-Civil Code provides that voluntary compromise agreements, lawfully consummated have the force of a definitive judgment in such transactions, however, may be upset by vices of consent consisting of error, fraud, violence and threats, as are set forth in LSA-Civil Code, Article 1819 et seq. We do not believe that any of the said vices of consent are apparent in this case. Some four day period elapsed between the signing of the release and the cashing of the draft, which we believe was sufficient time for the petitioners to seek further into the matter had they so desired. Contracts mutually entered into between parties having capacity to contract are binding obligations and must not be upset merely at the whim of one party or the other.
However, we do not feel that the above would apply to the releases signed on behalf of the minors involved. Articles 353 and 3072 of the LSA-Civil Code provides:
"Art. 353. The tutor can not borrow for the minor, purchase for him immovable (immovables) or compromise respecting his rights, without an authority from the judge, granted on the advice of a family meeting."
"Art. 3072. A man to transact must have the capacity to dispose of the things included in the transaction.
"The tutor of a minor or the curator of a person interdicted or absent can not make a transaction without being authorized thereto by the judge."
The releases were given in compromise of the damages to the minors involved in the accident. The compromise entered into between petitioners and defendant was a private transaction between the said parties and was without the authorization as required by Articles 353 and 3072.
These codal articles have been upheld in Succession of Calloway, 49 La.Ann. 968, 22 So. 225; Burney's Heirs v. Ludeling, 47 La.Ann. 73, 16 So. 507; Chambers v. Chambers, 41 La.Ann. 443, 6 So. 659; Metcalfe v. Alter, 31 La.Ann. 389; and Succession of Flower, 3 La.Ann. 292 and Chesneau's Heirs v. Sadler, 10 Mart, O.S., 726.
Title 9, Section 651 et seq. of the LSA-Revised Statutes of 1950 dispensed with the necessity of a family meeting but set up a new procedure for the handling of transactions which involve minors and interdicts. Under the said procedure, Court authority is still necessary, and it is our opinion that the compromise of a minor's rights entered into without such authority is an absolute nullity.
It appears that all the damages claimed on behalf of the minors were personal. There were no medical bills or other expenses for which the father could recover. We feel that these personal damages of the minors could not be compromised without following the procedures as set forth by law.
For the reasons hereinabove assigned, the judgment of the Lower Court is affirmed insofar as it pertains to the compromise entered into by Charlie Blades and Tink Oliver, but is reversed insofar as it *212 pertains to the compromise entered into for and on behalf of the minors, Rex Blades, Juan Blades and Sammy Oliver. The costs of this appeal to be paid by defendant and the case remanded to the Lower Court to be disposed of according to law.
Affirmed in partreversed in part.