240 So.2d 755 (1970)
Willie HOWARD, Jr., Plaintiff-Appellant,
v.
PAN AMERICAN FIRE & CASUALTY COMPANY, Defendant-Appellee.
No. 11496.
Court of Appeal of Louisiana, Second Circuit.
October 13, 1970.
Rehearing Denied November 17, 1970.
Writ Refused January 18, 1971.
Leslie B. Bagley, Mansfield, for plaintiff-appellant.
Johnston, Johnston & Thornton by J. Bennett Johnston, Jr., Shreveport, for defendant-appellee.
Before AYRES, DIXON and PRICE, JJ.
En Banc. Rehearing Denied November 17, 1970.
PRICE, Judge.
Willie Howard, Jr. brought this action, seeking damages for personal injuries allegedly received in an automobile accident occurring on April 17, 1969, on State Highway 509 in De Soto Parish, Louisiana. Pan American Fire & Casualty Company, the liability insurer of Don N. Robertson, is the named defendant. An exception of res judicata, based on a purported release signed by plaintiff, was sustained by the district court after a trial on the merits. From the judgment dismissing his action plaintiff perfected this devolutive appeal.
At about 6:20 a. m. on the date of the accident, Willie Howard, Jr. was driving his *756 brother's automobile westerly on Highway 509 toward Mansfield. A pickup truck driven by Don N. Robertson backed from a private drive onto the highway, allegedly at a time when the Howard vehicle was in such close proximity that a collision would have ensued between these vehicles if Howard had not swerved his vehicle. In allegedly swerving to avoid the Robertson truck, Howard lost control on the wet blacktop surface, his vehicle ran off the road and hit a culvert, causing it to overturn.
As the primary question involved on this appeal is the validity of the purported act of compromise or release executed by the parties, it is necessary that we set forth the events leading up to its confection as reflected by the evidence.
Late in the afternoon of the date of the accident an adjuster for Morneau Insurance Claims, Robert May, contacted Willie Howard, Jr., at the Coca-Cola Bottling Company in Mansfield where he was employed. He informed Howard that he represented the insurer of Robertson and desired to discuss the accident with him. On learning that the damaged automobile belonged to Willie Howard's brother, James, they proceeded to the home of Willie Howard, Sr., where both Willie, Jr. and James resided with their father. Not finding James at home they returned to Mansfield and encountered James and Willie, Sr., driving near the De Soto General Hospital. These parties discussed the accident and resulting damage while parked in the parking lot of the hospital for convenience.
The evidence reflects that May stated he would like to settle with James Howard for his wrecked automobile and asked James how much he wanted for the car. James asked $250.00 and the right to keep the car, which was described as a total loss. May agreed to this and tendered a release to James, who signed it. May took a statement from Willie, Jr. in regard to the events surrounding the accident. In the statement Willie mentioned his neck hurt him when he turned it and that he intended to go to a doctor. May testified he told Willie Howard, Jr. that he could not pay James Howard for the car damage unless the personal injury claim was settled also. He further testified that he asked Willie Howard, Jr. if $35.00 was sufficient, and Howard agreed to the sum. May contends at this point he handed Howard the release form properly filled in, and Howard signed it.
Willie Howard, Jr. contends that he understood May told him the $35.00 was only being sent to him for advance money for him to see a doctor, and that after a report was obtained on his condition they would agree on a settlement.
The draft for the sum of $35.00 was mailed to Willie Howard, Jr. about a week after the signing of the release. At this time he consulted his attorney and did not cash the draft.
Howard attacks the validity of the compromise instrument, contending that it does not meet the requirements of Louisiana Civil Code Article 3071 and seeks to have it rescinded under the provisions of Articles 3079 and 1841 of the Civil Code. These articles read as follows:
"3071. A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be reduced into writing.
"3079. A transaction may be rescinded notwithstanding, whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded in the cases where there exists fraud or violence.

*757 "1841. Error as to the nature of the contract will render it void.
The nature of the contract is that which characterizes the obligation which it creates. Thus, if the party receives property, and from error or ambiguity in the words accompanying the delivery, believes that he has purchased, while he who delivers intends only to pledge, there is not [no] contract."
Appellant argues that he executed the release in error in that he thought he was only signing an instrument to initiate medical treatment funds and not a full and final compromise of all claims for personal injuries. Appellant relies principally on the case of Wise v. Prescott, 244 La. 157, 151 So.2d 356 (1963), in which the Supreme Court of this State affirmed the action of a trial jury in setting aside a release because of a finding that there had been an error in the nature of the contract. In the Wise case the Supreme Court discussed the nature of the so-called "rush release" in a personal injury case and pointed out the danger of error on the part of the injured party inherent in this type of transaction.
As we understand the case, the Court recognizes the validity of a release executed within a few hours after an accident but suggests that releases of this type should be looked upon with some suspicion.
The facts in the Wise case are substantially different from those of the case at hand. There, a seventy-year old lady was injured rather painfully, although not hospitalized. She testified an adjuster came to her home the next morning and did not identify himself as representing an insurance company, but only a messenger of the assured who wanted to give her a gift of $105.00 to help her with expenses as he was sorry he had caused her injury. The lady did not have her glasses and when asked to sign a note of appreciation to the sender, actually signed a release for personal injuries. The adjuster testified to the contrary that he did identify himself and made an offer to compromise on behalf of his company for the $105.00 sum, which was accepted by Mrs. Wise. He further contended that she signed the release after looking at it a sufficient length of time to have read it. The decision rested primarily on a determination of credibility of witnesses.
In the case at hand we have two conflicting versions of what was said prior to and at the time of the signing of the release. Howard, his brother James, and his father all testified that the adjuster, May, said he was only sending Howard $35.00 to get him started on his medical treatment. Howard further contends the release agreement, which is a standard printed form, with appropriate blanks for names and amounts, did not have any blanks filled in at the time he signed it.
The adjuster, May, denies the version of the Howards. He admitted Willie Howard, Jr. mentioned his neck being sore and his intention of going to see a doctor. However, he testified he did not believe Willie Howard was hurt as he had worked all day after the accident loading and unloading coca-cola cases from a truck. He further testified that he felt there was a serious question of contributory negligence involved in the case, although the testimony does not show he discussed this with the Howards.
The trial judge resolved the conflicting testimony in favor of the defendant. It is elementary that in matters involving the credibility of witnesses the finding of the trial judge shall not be disturbed unless manifestly erroneous.
We do not find that he has committed any manifest error in his ruling. He believed that a twenty-four year old man, who had a seventh grade education, was capable of reading and understanding the clear provisions of the release agreement signed by him. He found no fraud or misrepresentation on the part of the adjuster, *758 May. We also concur in his finding.
It is significant that although Willie Howard, Jr. stated he intended to get medical treatment at the time of signing the release, he made no effort whatsoever to see any doctor until approximately one week after the accident, when his receipt of the draft prompted him to consult an attorney who referred him to an orthopedic surgeon for evaluation. It should also be noted that Howard worked during this entire one week period prior to consulting an attorney and a doctor.
The release form provisions are in simple, understandable language with a heading in large type "Release In Full of all claims". Above the signature lines at the end of the release the following phrase is in bold print and underlined: "CAUTION: This is a release. READ IT before signing."
Although the consideration was very minimal in this situation, this does not make the transaction invalid. Under Article 3078 of the Civil Code a transaction has the authority of things adjudged and may not be attacked on account of an error of law or any lesion.
The trial judge in his written reasons for judgment followed a line of cases where releases were sought to be set aside because of alleged misrepresentations by insurance adjusters and the courts rejected their contentions holding that literate people are clearly charged with reading that which could have been read and easily understood; Tooke v. Houston Fire & Casualty Insurance Company, 122 So.2d 109 (La.App. 2d Cir., 1960); Blades v. Southern Farm Bureau Casualty Ins. Co., 95 So.2d 209 (La. App. 1st Cir., 1957); Thigpen v. Guarisco, 197 So.2d 904 (La.App. 1st Cir., 1967); Cleveland v. Employers' Liability Assurance Corporation, 222 So.2d 644 (La.App. 2d Cir., 1969); Williams v. Boston Insurance Co., 222 So.2d 306 (La.App. 1st Cir., 1969).
We agree with the trial judge that the decisions in these cases are most appropriate to the facts of the case presently before us. Neither misrepresentation nor deceit on the part of the insurance adjuster has been established by the evidence in the record of this case; nor does this evidence reveal that the plaintiff signed the release in error as to the matter in dispute or the nature of the contract.
For the foregoing reasons the judgment appealed from is affirmed at appellant's cost.