285 So.2d 870 (1973)
Marie Hasley ADAMS et al.
v.
J. K. WOOD et al.
NORTHLAND INSURANCE COMPANY et al.
v.
J. K. WOOD et al.
Nos. 9575 and 9576.
Court of Appeal of Louisiana, First Circuit.
November 12, 1973.
*871 James J. Durio, New Orleans, for plaintiffs-appellants.
Sam J. D'Amico, Baton Rouge, for defendant-appellee Woods.
Horace C. Lane, Baton Rouge, for defendant-appellee State Farm.
Before SARTAIN and TUCKER, JJ., and WATSON, J. ad hoc.
WATSON, Judge ad hoc.
This is an appeal in connection with litigation resulting from an automobile accident involving three fatalities and serious personal injuries. We agree with the trial court that the fundamental issue to be resolved is factual. The issue is: which automobile was in the wrong lane of travel at the time of the impact?
In his written reasons for judgment the trial court has stated ably the facts and the conclusions of law to be deduced from them, and we will quote these with approval, excluding only that portion of the trial court's opinion which we do not find necessary to the disposition of the case:
"Plaintiffs in these consolidated cases seek recovery for losses sustained resulting from an automobile accident which occurred on March 15, 1969, on U. S. Highway 61, approximately 2.4 miles north of the intersection with Louisiana Highway 10, near St. Francisville, Louisiana.
"In suit #4280, Marie H. Adams, widow of Charles E. Adams, brought suit for herself and for her five minor children, as did John and Annie Mae Adams for themselves and their children, against J. K. Wood, as parent and natural tutor of his then minor son, Alexander N. Wood, and against State Farm Mutual Insurance Company, as automobile insurer of J. K. Wood. Alexander N. Wood has since become a major and pleadings in his behalf were amended forthwith. In suit #4448, Northland Insurance Company, automobile insurer of John Adams, Jr., seeks recovery of the cost of repairs to the Adams vehicle paid for under its policy, claiming subrogation to the rights of its insured against the defendants. John Adams, Jr. desires recovery from the defendants of the $50 deductible contained in his policy with Northland Insurance.
"All plaintiffs in suits #4280 and #4448 allege negligence of Alexander N. Wood as the sole cause of the accident while defendants deny any fault on their part, insisting instead that the collision occurred because of negligence by Charles E. Adams, such negligence being imputable to all plaintiffs. J. Kenneth Wood and Alexander Wood, defendants in suit #4280, filed a reconventional demand asking relief for damages in suit #4521.
"This accident occurred just after midnight as a result of a collision between a vehicle driven by Charles Adams, traveling in a northerly direction, and a vehicle driven by Alexander N. Woods, traveling in a southerly direction, on Highway 61 near St. Francisville, Louisiana.
"The Adams vehicle was owned by John Adams, Jr. Passengers in the Adams car were: Charles Adams, the driver: John Adams, Jr., owner of the vehicle; Annie Adams, wife of John Adams; four of the minor children of John Adams, and Linda Fay James, daughter of Annie Adams.
"The Wood vehicle was occupied solely by Aleander N. Wood, the then minor son of John K. Wood.
"Three occupants of the Adams vehicle were killed as a result of the accident; namely, Charles E. Adams, Linda Fay James, and John Calvin Adams.
*872 "From the evidence and testimony it is clear that this case presents solely a question of fact, namely: which vehicle was proceeding in the wrong lane of travel? Resolution of the dispute as to location of the point of impact is determinative of the issues and liabilities here presented.
"Upon this question volumious evidence was introduced at trial in the form of testimony of witnesses, physical evidence, photographs and expert testimony.
"State police Trooper Albert Arbour was the investigating officer at the scene of the accident. By his testimony plaintiffs attempted to establish the point of impact in the northbound lane traveled by the Adams vehicle. Trooper Arbour testified that his investigation indicated that the collision point was in the northbound lane. His conclusion was based on gouge marks that he found in the northbound lane. However, he could not say exactly where or how far into the northbound lane the point of impact was. He further testified that he found gouge marks only in the northbound lane and that he attributed all of these to the Adams vehicle and not to the Wood auto.
"When Trooper Arbour arrived at the scene injured and dead were numerous, scattered over the area, and his main concern was attending to their needs. Darkness of the midnight hour further burdened and hampered the performance of his investigation. Trooper Arbour established that Highway 61 at the accident scene is a two-lane asphalt-surfaced road marked by five painted lines: one solid white line edging each side of the shoulder of the highway; one broken white line splitting the highway down the center flanked by two solid yellow lines indicating a no-passing zone.
"Passengers of the Adams vehicle testified for the plaintiffs that their auto was moving to the right before the accident to avoid hitting the Wood auto and was at least partially onto the right-side shoulder of the northbound lane at the moment of impact.
"The principal witness for the defendants, Wood, et al., as to the point of collision was Alvin Doyle, Jr., a widely recognized expert in the field of automobile accident investigation. Mr. Doyle spent six days investigating the accident, employing the services of various assistants including those of Victor Blanchard, an expert chemist. Mr. Doyle's conclusion was that the point of collision was in the southbound lane traveled by the Wood auto and not the northbound lane as Trooper Arbour had concluded. Mr. Doyle's findings were based on extensive, detailed investigations and scientific tests. He discovered gouge marks in the southbound lane that went unnoticed by Trooper Arbour. His findings and corroborative testimony and physical evidence left no doubt that the gouge marks in the southbound lane were made by the Adams vehicle. Paint samples, asphalt samples, comparisons of size of gouge marks to size of the frames of the two cars involved (the two inch square-cut gouge mark in the southbound lane matched perfectly the two inch frame of the Adams auto but not the three and three-fourth inch frame of the Wood auto), and other evidence including extensive photographs all strongly support his conclusion of impact in the southbound lane.
"The gouge marks in the southbound lane were shown to start six inches west of the broken white center line. Testimony by Mr. Doyle established that the frame member making these gouge marks was 17 inches inward from the left side of the Adams vehicle, thereby placing the Adams vehicle a minimum 23 inches into the southbound lane rightly occupied by the Wood auto. There was a ten inch overlap between the two vehicles when they collided left-front to left-front. Thus, the Wood vehicle was at least thirteen inches into his southbound lane and thirteen inches away from the center line. Mr. Doyle felt that the 23 inches was a minimum because the *873 force of collision quite probably knocked the Adams auto to the right toward the center line and this seems especially logical in view of the testimony of plaintiffs' own witnesses, in suits #4280 and #4448, that the Adams vehicle was pulling to the right at the moment of impact. The testimony of these passengers of the Adams auto that the vehicle was halfway onto the right-side shoulder of the northbound lane at the moment of collision is refuted by all the evidence, including the testimony of Trooper Arbour, which places the impact point near the center of the road. Additionally, Mr. Doyle's testimony destroys any idea that places the collision point anywhere except in the southbound lane. If, indeed, the Adams vehicle was moving to the right at the time of collision, then it must by necessity have been farther into the southbound lane just prior to the accident and consequently unable to extricate itself from its untenable position before collision.
"In Jones v. Minor, 247 So.2d 900 (La. App. 1st Cir. 1971), the Court of Appeal, First Circuit, affirmed a decision by this Court dealing with a problem similar to the instant case. In Jones, supra, Mr. Doyle, the same as here, appeared for the defendants and a State Trooper testified for the plaintiffs. The Court of Appeal held:
"`In this instance, Doyle's investigation appears most thorough. His analysis of the physical facts gleaned from his investigation and minute inspection of the vehicles involved appear both logical and in accord with the facts thereby disclosed. On the other hand, Trooper Stuard's investigation was comparatively superficial.'" Jones, supra at 903-904.
"As in Jones, supra, Mr. Doyle's investigation was complete and conclusive and, although performing under stress and adverse conditions, Trooper Arbour's findings must yield to the results of Mr. Doyle's research and testimony therewith.
"Again, as in Jones, supra at 903, the "testimony of the occupants of the vehicles involved . . . shed little, if any, light on the matter."
"Regarding the issue of intoxication of Alexander N. Wood, the evidence clearly weighs against such a finding and those alleging it fail to sustain their claim in this matter. Mr. and Mrs. Roy G. Lanoue were with Alexander Wood just prior to the accident and they forcefully assert that he was not inebriated.
"We find that the accident occurred in the southbound lane occasioned by the negligence of Charles E. Adams, . . .
"John Adams, Jr., owner of the Adams vehicle and brother of Charles E. Adams, operator of said automobile, was sitting in the front-right seat of the car at the time of the accident. All of the occupants of this vehicle were going to Tallulah, Louisiana to visit relatives. John Adams, Jr., had left from his house and picked up Charles Adams who then took over the driving duties.
"From the foregoing, the Court finds that J. Kenneth Wood and his now major son, Alexander Wood, are entitled to judgment in their behalf in their reconventional demand in suit #4280 for the injuries and losses they sustained as a result of the negligence of Charles E. Adams . . .
"As to amount of recovery for plaintiffs in reconvention in suit #4280, special damages of $1,138.88 were proven as medical expenses. Recovery for loss of the Wood vehicle is denied for insufficient and faulty proof. A plaintiff bears the burden of establishing each and every element of damages claimed. Where a vehicle is totally destroyed or so badly destroyed that the cost of repair exceeds its value, the proper measure of damages is the value of the vehicle as of the date of the accident less salvage value thereof. Cloney v. Travelers Insurance Co., 253 So.2d 83 (La.App. 1st Cir. 1971), writ denied 259 La. 871, 253 So.2d 212 (1971); Craig v. Burch, 228 So. 2d 723 (La.App. 1st Cir. 1969). Herein, *874 no proof was offered to properly establish the amount of damage to the Wood vehicle and no recovery can be allowed for this item.
"The only remaining question is the amount of quantum as to the physical and mental pain, suffering and anguish of Alexander Wood. As a result of the accident Alexander Wood was rendered unconscious, remained in the hospital for ten days, suffered a concussion and head injuries involving lacerations of the face, scalp, left ear, nose, mouth and eyelids. He also received a fracture of the right radius which resulted from an allergic reaction to penicillin injections given him while in the hospital. He has several small facial scars which are hardly discernible and, by his own testimony, "very slight." (TR. 108). Although glass particles had damaged his eyes in the accident he has had no eye trouble since that time and presently has complete use of his eyes. Dr. Thomas Y. Gladney was the attending physician. He did not testify but his medical report was submitted pertaining to the injuries sustained by Alexander Wood in the collision in question. His report confirmed the injuries listed above. He first examined Mr. Wood on March 15, 1969, the date of the accident, and further, following hospital discharge, on the 1st and 15th of April, 1969. In April, Dr. Gladney found that Mr. Wood continued to have effects of the contusion of the brain manifested by alteration of the sense of smell and taste. On May 14th and July 7th, 1969, Dr. Gladney again saw Mr. Wood who continued to exhibit some apprehension and lack of concentration, but his appetite had improved and he had gained ten pounds. July 7th, 1969, was the last date of examination by Dr. Gladney of Mr. Wood."

* * * * * *
The medical information in the record concerning Alexander Wood's injuries is somewhat limited. We are convinced that he received serious and substantial injuries. A factor, impressive to us but not mentioned by the trial court, is that the young man was required to withdraw from college for an entire semester due to the accident.
After reviewing the record, including the testimony of the witnesses, the documentary evidence and the detailed photographs of the accident site, the vehicles, and the various parts of the automobiles, we have concluded that there is no manifest error in the factual findings of the trial court. There is considerable conflict in the testimony of certain witnesses; we believe that the trial judge was in a better position to resolve these conflicts. Additionally, we think that the trial judge was in an advantageous position to place appropriate weight on the testimony given by parties to the litigation. Certainly, there is a reasonable factual basis for the trial court's findings and we will not disturb these findings in the absence of manifest error. Canter v. Koehring Company, La., 283 So.2d 716 (1973); Andrews v. Williams, 281 So.2d 120 (La.Sup.Ct.1973); Orlando v. Polito, 228 La. 846, 84 So.2d 433 (1955); McCann v. George, 238 So.2d 197 (La.App. 1 Cir. 1970), writ refused, 256 La. 883, 239 So.2d 541 (1970).
The trial court rendered judgment against the Adams plaintiffs and against Northland Insurance Company, collision insurer of the Adams' vehicle, dismissing their claims. The trial court rendered judgment in favor of J. Kenneth Wood, in the amount of $1,138.88 for medical expenses incurred on behalf of his son, and in favor of Alexander Wood in the amount of $7,500.00 as general damages, these judgments being entered against Marie Hasley Adams, individually and as tutrix of her minor children. We find no error in the amounts awarded considering the nature and extent of the injuries suffered by young Wood. However, we believe that this latter judgment is erroneously worded in granting judgment against the widow "individually and as natural tutrix," (TR. 82) and it will be recast below.
*875 Therefore, the judgment of the trial court denying recovery to the Adams plaintiffs and denying recovery to Northland Insurance Company will be affirmed. As to the judgment in favor of Alexander N. Wood and his father, that judgment is recast as follows:
It is ordered, adjudged and decreed that there be judgment in favor of defendant and plaintiff in reconvention, Alexander N. Wood, in the sum of $7,500.00 and in favor of defendant and plaintiff in reconvention, J. Kenneth Wood, in the sum of $1,148.88 and against the estate of Charles E. Adams, represented in these proceedings by his widow, Marie H. Adams, and his five minor children, Byron Adams, Keith Adams, Michael Anthony Adams, Charles E. Adams, Jr. and Sonya Marie Adams, together with legal interest thereon from date of judicial demand until paid.
Costs of the appeal are taxed against appellants.
Affirmed and recast.