290 So.2d 405 (1974)
Anna Rose MOONEYHAN, Plaintiff-Appellee,
v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant-Appellant.
No. 12224.
Court of Appeal of Louisiana, Second Circuit.
February 12, 1974.
*406 Lunn, Irion, Switzer, Johnson & Salley by Harry A. Johnson, Jr., Shreveport, for defendant-appellant.
Henri Loridans, Bossier City, for plaintiff-appellee.
Before BOLIN, PRICE and HALL, JJ.
BOLIN, Judge.
Anna Rose Mooneyhan sued State Farm Mutual Automobile Insurance Company, her husband's liability insurer, for personal injuries sustained by her on January 4, 1971, while riding in the family automobile being driven by her husband. Plaintiff's injuries were caused when the automobile struck a bridge during inclement weather. The negligence of Mr. Mooneyhan was not made an issue in the lower court nor on appeal.
State Farm filed an exception of res judicata alleging that Mr. and Mrs. Mooneyhan compromised and settled all claims against defendant by signing a release on April 30, 1971, in consideration for the payment by defendant to the Mooneyhans of $1248.80. The exception of res judicata was separately tried and for reasons made a part of the record the exception was overruled and the release was set aside. Prior to the trial of the case plaintiff returned $478.40 to defendant. State Farm reurged the validity of the release and settlement as an affirmative defense on the merits. The trial judge dictated his reasons into the record and again found the release was not binding on plaintiff; that Mrs. Mooneyhan was entitled to recover $5000 for her personal injuries and $770 for loss of wages. From a formal judgment signed in conformity with these reasons defendant appeals and plaintiff answers the appeal seeking an increase in the *407 award. We amend the judgment by reducing the amount to $5128.40.
The issues are:
(1) Did the purported release, signed on April 30, 1971, constitute a full settlement sufficient to sustain a plea of res judicata or bar plaintiff from recovery for personal injuries under the affirmative defense raised by defendant in its answer?
(2) Assuming the first issue is resolved against defendant, was the trial court in error in awarding $770 for loss of wages?
(3) In the event plaintiff is entitled to recover, should the award be increased?
The record reflects that a few days after the accident an adjuster for State Farm called on the Mooneyhans and discussed various aspects of the coverage under the policy. The adjuster was informed that Mrs. Mooneyhan was pregnant and that no final settlement could be made of the claim until after the birth of her baby and she had been examined by a doctor.
In addition to bodily injury the policy covered payment for property damage and medical expenses. On January 11, 1971 State Farm paid Mr. Mooneyhan $1175 for property damage, for which he signed a release for all claims he had against defendant. Defendant also admits paying a total of $1055.30 as medical expenses under the policy, the first such payment being on January 27, 1971, and the last two payments being on May 3, 1971 and May 5, 1971, respectively, subsequent to the signing of the purported final release.
During the course of the various conversations and negotiations had between the adjuster for State Farm and the Mooneyhans it was brought to the attention of the adjuster that various articles, which were in the trunk of the car at the time of the accident, were either lost or damaged. The adjuster testified that, although it was his opinion the policy did not cover these articles, he agreed that his company would pay the sum of $350 for the articles and classify the payment as an inconvenience factor under the bodily injury section of the policy.
Mrs. Mooneyhan had also told the adjuster that, at the time of the accident, she was employed and was receiving $128.40 "take-home pay" every two weeks. The adjuster agreed to pay any loss of wages occasioned by the injuries suffered in the accident. The first such payment was for $256.80 on February 16, 1971. Approximately every 14 days thereafter an additional payment of $128.40 was made and on each occasion Mr. and Mrs. Mooneyhan signed a receipt which stated the payment was for loss of earnings, reflected the amount previously paid, and the total paid to the date of the receipt. The last receipt for loss of earnings was dated April 15, 1971 for $128.40, reflecting the total paid to that date was $770.40.
On April 30, 1971 the document styled "Release", upon which defendant relies for its plea of res judicata and the affirmative defense of compromise, was signed by the Mooneyhans. This document states the consideration was payment by defendant to the Mooneyhans of $1248.80, which was computed by adding the previously paid amount of $770.40 to $478.40. It is conceded by the Mooneyhans and the adjuster that only the sum of $478.40 was paid at the time this latter document was signed. Plaintiff, Mrs. Mooneyhan, asserts, and she and her husband so testified, that the payment of $478.40 represented $128.40 for loss of wages and the $350 which the adjuster had agreed to pay for the loss of the items in the truck of the automobile. They both testified they were assured from the beginning of the negotiations that they would not enter into any final settlement for personal injuries to Mrs. Mooneyhan until after the birth of their child. The adjuster on the other hand contends that the release was intended to be for all claims arising out of the accident.
*408 Counsel for appellant has strenuously argued orally and in brief before this court that the release executed by plaintiff and her husband on April 30, 1971 is unambiguous and clearly states that it was intended to be a full and final compromise and settlement of all claims against defendant arising out of the accident which occurred on January 4, 1971. The following articles of Louisiana Civil Code are cited as authority for this argument:
Art. 3071.
"A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit, adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
"This contract must be reduced into writing."
Art. 3078.
"Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected."
Counsel for appellant also cites the following cases which it is contended support the claim that plaintiff is bound by the conditions of the release which she signed: Blades v. Southern Farm Bureau Casualty Insurance Co., 95 So.2d 209 (La.App. 1 Cir. 1957); Tooke v. Houston Fire & Casualty Ins. Co., 122 So.2d 109 (La.App.2d Cir. 1060); Williams v. Boston Insurance Co., 222 So.2d 306 (La.App. 1 Cir. 1969); Cleveland v. Employers' Liability Assurance Corp., 222 So.2d 644 (La.App.2d Cir. 1969); Howard v. Pan American Fire & Casualty Co., 240 So.2d 755 (La.App.2d Cir. 1970writs refused).
Counsel for appellee contends with equal force that the instant case is governed by the following articles of the Louisiana Civil Code:
Art. 3073.
"Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
"The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises."
Art. 3079.
"A transaction may be rescinded notwithstanding, whenever there exists an error in the person or on the matter in dispute. It may likewise be rescinded in the cases where there exists fraud or violence."
In support of this argument we have been cited to the cases of Moak v. American Automobile Insurance Co., 242 La. 160, 134 So.2d 911 (1961) and Harris v. Stockman et al., 197 So.2d 365 (La.App.2d Cir. 1967). We conclude the decision in the Moak case is controlling and the rationale as expressed in that opinion disposes of most of the contentions made by appellant in this case. It is to be noted that the court in Moak commented on the holdings in Blades and Tooke and distinguished them, nevertheless finally holding that if they were not in accord with the Moak case they were in direct conflict with the provisions of the Louisiana Civil Code. We have experienced no difficulty in reconciling the facts of the instant case with the Civil Code articles cited by both appellee and appellant. For example, in Article 3071, quoted supra, the key phrase as it relates to the question before us is "adjust their differences by mutual consent".
*409 (Emphasis ours) It is provided in Civil Code Article 3073, transactions "do not extend to differences which the parties never intended to include in them"; and in Article 3079 we note transactions may be rescinded "whenever there exists an error in the person or on the matter in dispute." (Emphasis ours)
From our study of the testimony and the exhibits presented in this case we agree with the findings of the trial judge that plaintiff never intended to compromise and settle her claim for personal injuries by signing the document dated April 30, 1971. To the contrary it is evident that at the time this document was signed defendant's adjuster had agreed to pay Mrs. Mooneyhan $128.40 for loss of wages and an additional sum of $350 for the articles in the trunk of the automobile. On the day the document was signed the Mooneyhans received only $478.40, which corroborates their version that there was no intention to settle for her injuries.
It is also to be noted that State Farm made two payments totaling $96.00 for medical expenses in May following the purported final release executed on April 30, 1971. It therefore seems apparent that defendant did not consider the instrument signed on April 30, 1971 to be a final and complete settlement of all claims due under the policy.
We next consider the issue of whether the lower court was in error in awarding plaintiff $770 for loss of wages. The receipts in evidence establish that amount had already been paid by defendant. However, the record establishes plaintiff was entitled to loss of wages from April 15 to April 30, of $128.40, being the wages portion of the $478.40 which she had previously returned. Plaintiff testified that at the time she executed the instrument on April 30, 1971 she was unable to return to work but she probably would not have resumed her employment anyway because of her pregnancy.
Last for consideration is whether the award of $5000 for the personal injuries to plaintiff should be increased. On this issue the trial judge stated:
"The wife's injuries were such that she was required to stay in the hospital for one week. Doctors concluded that she received a severe sprain of the left foot, same being placed in a cast for a period of time. She received a 15 to 20 per cent fracture of the L-1 vertebra. She received injury and aggravation to her right sternocleidomastoid. She was required to wear a Jewett brace for her back for a two month period of time. The cast on her foot remained for approximately 16 days. Thereafter it was necessary for her to wear an ace bandage on her foot for 6 or 7 months.
"While she was in the hospital, immediately after the accident, it was determined that she was pregnant. This caused her some concern reference the ultimate health and safety of the unborn child. It also required her, due to the additional weight factor of her body, to have support for her foot. The doctors concluded that she received a 5 to 10 per cent permanent impairment as a result of the injury. Additionally, she continued to have symptoms of tiredness to the extent that she was unable to enjoy such activities as picking up and caring for the infant child the first few months of its life. Plaintiff indicated that she would attempt to lift the child, on various occasions, but such would result in aggravation to the discomfort in her back.
"The Court feels that she is entitled to the sum of $5,000.00 for the injury which she received as a result of this accident."
While we think the award to plaintiff for her physical injuries was rather conservative, we do not find the trial judge abused the "much discretion" accorded him under the provisions of Louisiana Civil Code Article 1934(3), as interpreted by *410 Gaspard v. LeMaire, 245 La. 239, 158 So. 2d 149 (1963) and those cases following.
For the reasons assigned the judgment of the lower court is amended so as to reduce the total award from $5,770.00 to $5,128.40, and as thus amended is affirmed at appellant's cost.