291 So.2d 857 (1974)
Alice Evelyn TITARD et al., Plaintiffs and Appellants,
v.
LUMBERMEN'S MUTUAL CASUALTY COMPANY, Defendant and Appellee.
No. 3899.
Court of Appeal of Louisiana, Third Circuit.
March 12, 1974.
Rehearing Denied April 11, 1974.
*858 Jacque B. Pucheu, Euncie, for plaintiffs-appellants.
Davidson, Meaux, Onebane & Donohoe, by James J. Davidson, III, Lafayette, Lewis & Lewis by Seth Lewis, Jr., Opelousas, for defendant-appellee.
Before FRUGE, DOMENGEAUX and WATSON, JJ.
DOMENGEAUX, Judge.
This is a suit to recover damages for injuries sustained by Alice Titard Batton, on the night of June 7, 1969, in a fall at the home of John Edwards in Opelousas, Louisiana. This case comes before us for the second time. Originally, in a memorandum opinion reported at 264 So.2d 382, we affirmed the District Court judgment rejecting the plaintiffs' demands. Thereafter the Supreme Court granted a writ of certiorari, 262 La. 1166, 266 So.2d 446 (1972), reversed the decision of this court, and rendered judgment in favor of plaintiffs, Alice Titard Batton and her husband, against Lumbermen's Mutual Casualty Company. The essential facts of this accident are reported in the opinion of the Supreme Court at La., 282 So.2d 474 (1973). The court therein remanded the case to this court for assessment of damages. This matter is presently before us only on the question of quantum.
Quantum for personal injuries must be decided in each particular case from a consideration of the facts and circumstances peculiar to that case. Ballard v. National Indemnity Co. of Omaha, Nebraska, 246 La. 963, 169 So.2d 64 (1964); Heider v. Employers Mutual Liability Insurance Company of Wisconsin, 231 So.2d 438 (La.App. 4th Cir. 1970).
In the present case Alice Titard Batton was first examined by her family physician, Dr. Ladislas Lazaro, II, an Opelousas general practitioner, on June 9, 1969, two days after the injury occurred. His deposition and reports concerning the treatment and medication rendered to the plaintiff indicate the following: Mrs. Batton's face was markedly discolored and swollen over the left side in its entirety. She complained of considerable pain in the region of her face and of soreness in her neck. The doctor found extreme tenderness over the left facial nerve area. She complained of numbness of the left side of her nose extending up into the area on the lateral side of the left eye and down to the lateral side of her mouth on the left side. She also complained of headaches and was thereafter admitted to the hospital where ice packs were applied for swelling, and medication administered for pain. X-rays were also taken which revealed facial fractures through the inferior rim and lateral superior edge of the left orbit as well as through the left maxillary antrum in its anterior wall. Mrs. Batton was also spitting up blood which was said to be common in such fractures and due to the seepage of blood into the sinus from the maxillary antrum fracture.
The plaintiff remained in the hospital and on June 11 new x-rays were taken and a slight fracture of the nasal bone was found as well as a fracture through the frontal zygomatic synchondrosis or sinus wall. In addition, because of neck pain complaints, x-rays were taken of the upper cervical area which showed some osteoarthritic changes. However, the doctor felt that these were a result of age and normal progress through life, rather than being caused or aggravated by the accident.
In the following few days Mrs. Batton experienced a decreased sensation of numbness, but continued to spit up blood and complain of headaches. However, by June 17th the bleeding and headaches seemed to have stopped and she was discharged from the hospital the following day.
*859 She was subsequently seen again by Doctor Lazaro on June 26, 1969, after eight days at home, and was still having trouble with coughing up blood, although the amount had diminished considerably. At this visit additional x-rays were taken and a fracture of the zygomatic arch on the left side was found. It was however decided at this time that the facial fractures caused only a slight bone displacement and that reduction and fixation surgery would not be required.
On July 7th the plaintiff was again seen by Doctor Lazaro and complained of dizziness as well as the continual coughing up of blood. Doctor Lazaro testified that the blood no doubt was coming from the maxillary area but that the dizziness was caused by inter-ear problems and not a result of the accident. In addition he stated that although the dizziness could have been aggravated by the accident it was his opinion that it was not.
Doctor Lazaro did not see the plaintiff again for injuries related to the accident until December 9, 1970, when Mrs. Batton stated she was no longer having headaches. The doctor felt at this time that plaintiff had completely recovered from her accident. He also indicated that there were no facial deformities as a result of the injuries.
The last visit before trial was made on December 16, 1970, where the plaintiff continued to complain of inter-ear dizziness.
A deposition was also given by Doctor Merrick Wyble, an Opelousas physician specializing in ophthalmology, who examined Mrs. Batton in consultation with Doctor Lazaro on June 9, 1969, and the days immediately following. His examination showed substantially the same as that found by Doctor Lazaro. In addition he indicated plaintiff was having difficulty in opening and closing her jaw which he felt was attributable to the bruised area. He found no damage to the left eye itself except for infra orbital nerve damage indicated by numbness. The doctor further stated that although such nerve injury is usually temporary he did not examine the plaintiff after January 13th and could not say if the damage was temporary or permanent. It was also his opinion that plaintiff's facial fractures probably caused her acute headaches shortly following the injury but that her concussion type injury could have caused headaches for an indefinite period. He also felt the facial bone fractures of this type would have usually healed within six weeks after injury.
The plaintiff testified at trial that after her ten-day hospital stay she was bedridden at home for several weeks and unable to do any household duties for about two months. It was also her testimony that the greater part of numbness and spitting up of blood was over in two months but that as of the time of trial she still has headaches and dizziness whenever she stoops over. Her husband, Robert Batton, Sr., and fellow worker, Ruth St. Amant Leger, indicated that the plaintiff had also become nervous, quick tempered, and irritable since the accident.
In summary, we find the evidence preponderates to the effect that Mrs. Batton received serious and painful injuries as a result of her accident. She spent ten days in the hospital, experiencing considerable pain during this period. Although she received four slight facial fractures and a slight nasal bone fracture from her fall, surgery was not required. Plaintiff had no facial deformities as a result of her injuries. The numbness and spitting up of blood complained of had admittedly ended in about two months after the accident. However, it was not until some eighteen months after the accident that plaintiff indicated her headaches had stopped and Doctor Lazaro felt she had completely recovered. Even so, at trial, over two years after the accident, the plaintiff stated she continued to experience dizziness and headaches. As aforementioned, however, Doctor Lazaro felt the dizziness was not attributable to plaintiff's fall.
*860 As a result of these aforementioned injuries Mrs. Batton seeks damages in the amount of $15,000.00 for physical pain, suffering, and mental distress. Her husband, as head and master of the community seeks $800.00 for the loss of his wife's wages for two months. All medical expenses have previously been paid by the defendant, totalling $769.00.
The record indicates Mrs. Batton was in fact out of work for two months and although she was paid during this period, the time lost was charged against both her accumulated annual and sick leave. In addition she worked overtime hours to make up the rest of her lost time. Her salary was stated to be $400.00 per month.
On the question of quantum for Mrs. Batton's personal injuries we often look to the awards in other cases with similar injuries to serve as an aid in our determination of an amount to be awarded. However, such similarity in injuries and subsequent awards are only used as comparisons and "rivet no steel frame of uniformity". Miller v. Thomas, 258 La. 285, 246 So.2d 16 (1971); See also Ballard v. National Indemnity Co. of Omaha, Nebraska, supra.
Thus we have examined other cases involving injuries somewhat similar to those in the instant case. These cases include those cited by the defendant where the awards ranged from $2,000.00 to $3,500.00 [Liverman v. Gee, 242 So.2d 369 (La.App. 2nd Cir. 1970) $3,500.00; Perniciaro v. Travelers Ins. Co., 227 So.2d 778 (La.App. 4th Cir. 1969) $2,000.00; Minor v. Maryland Casualty Co., 156 So.2d 235 (La.App. 4th Cir. 1963) $3,000.00], the one case cited in the briefs by the plaintiffs, McDaniel v. Welsh, 234 So.2d 833 (La.App. 1st Cir. 1970), in which $8,475.00 was awarded for pain, suffering, and residual injuries, and the additional case called to our attention by the plaintiffs' counsel on oral argument, Taylor v. City of Baton Rouge, 233 So.2d 325 (La.App. 1st Cir. 1970), where the court awarded $15,700.35 damages. After considering the injuries of the parties in these cited cases in comparison with those of Mrs. Batton, we are of the opinion that the plaintiff's injuries herein fall somewhere in between those cited by opposing counsel.
Taylor differs from the instant case in several respects. First and foremost we note that this was an affirmance of a trial court's award which was not found to be an abuse of the district judge's wide discretion. In addition this was an emotionally charged assault and battery case against a city police officer who the court found had repeatedly and severely beaten an unresisting automobile driver with his nightstick. As to the injuries received, the plaintiff therein sustained severe head injuries which required corrective surgery for a fractured cheekbone performed by a plastic surgeon. Over five years after the incident the plaintiff had a residual impairment in his ability to raise his left eyelid, in addition to complaints of tenderness over the left temple and headaches. We must also point out that it is unclear from the opinion the exact amount which was awarded the plaintiff for pain, suffering, and injuries. The appellate court at one point states that the award was for "damages for personal injuries and related loss and expense sustained and incurred" and thereafter in the opinion implies that part of the recovery was for indignity and humiliation.
In the three cases cited by the defendant only Minor is similar to the case herein as to the extent of injuries received and we feel the award therein of $3,000.00 could have been even further increased without becoming excessive. We also note that this case was handed down over a decade ago. Nevertheless, we feel that plaintiff's injuries herein require a larger award.
We have also closely considered other cases including the following: Addison v. Travelers Ins. Co., 281 So.2d 805 (La.App. 1st Cir. 1973) $5,000.00; Tamplain v. Collinswood Poultry Co., 279 So.2d 277 (La. App. 4th Cir. 1973) $6,500.00; Crenwelge *861 v. State Farm Mutual Automobile Ins. Co., 277 So.2d 155 (La.App. 3rd Cir. 1973) $6,500.00; Adams v. Wood, 285 So.2d 870 (La.App. 1st Cir. 1973) $7,500.00; Cockerham v. Koelemay, 265 So.2d 665 (La.App. 2nd Cir. 1972) $9,500.00; Christy v. City of Baton Rouge, 282 So.2d 724 (La.App. 1st Cir. 1973) $12,000.00. Thus we have reviewed cases with awards ranging from $2,000.00 up to $15,700.35.
Under the facts and circumstances peculiar to this case our conclusion is that Mrs. Batton's injuries and the pain and suffering attributable thereto were such that the sum of $10,000.00 is a proper and adequate award.
On the question of lost wages, we think the jurisprudence is clear that the plaintiff, Robert Batton, as head and master of the community, is entitled to claim such loss of earnings even though his wife was paid her usual salary for her two months absence, inasmuch as the lost time was charged against her accumulated annual and sick leave. Dunlap v. Armendariz, 265 So.2d 352 (La.App. 4th Cir. 1972); Mid-States Insurance Co. v. Parker, 232 So.2d 799 (La.App. 4th Cir. 1970); Sebren v. Millers Mutual Fire Insurance Co. of Texas, 182 So.2d 99 (La.App. 3rd Cir. 1966).
For the above and foregoing reasons, the judgment of the District Court is reversed, and judgment is hereby rendered in favor of Robert Batton in the amount of $800.00 and in favor of Alice Titard Batton in the amount of $10,000.00. Inasmuch as judicial demand in this case was made before the effective date of the change in legal interest rates, interest will accrue from date of judicial demand until paid at the rate of 5% per annum. See Ducote v. Life Insurance Co. of La., 245 So.2d 531 (La.App. 3rd Cir. 1971); Hebert v. Travelers Ins. Co., 245 So.2d 563 (La.App. 3rd Cir. 1971). Said judgment is against the defendant, Lumbermen's Mutual Casualty Co., who is also cast for all costs.
Reversed and rendered.