REDMANN, Chief Judge.
Defendants, a motorcycle driver and his liability insurer, appeal from a $31,000 judgment on jury verdict for injuries plaintiff suffered while a guest passenger on the motorcycle. Defendants argue that plaintiff had compromised his claim, and alternatively question both liability and quantum. We affirm.
Plaintiff’s injuries from being thrown from the motorcycle included “very large abrasions and contusions” to the right side of face and body and four facial bone fractures. The jaw bone fracture was stable (apparently requiring no repair). “The depressed cheek bone was corrected through incision inside the hairline .... The repair of the maxillary antrum — that’s the sinus that was fractured in its wall — it had to be approached through the inside of the mouth .... [Tjhere was an additional . .. fracture at the maxilla-zygomatic suture line where the two bones come together . . . that required fixation .... We drilled a hole where we could pad the fixation to stabilize it.” Plaintiff also suffered trauma-caused abscess to his upper right front tooth, requiring opening of the root canal and later capping of the tooth. Future medical will include removal of “tattooing” on his face resulting from being ground on an asphalt roadway, and, probably, further root canal dental work.
Plaintiff had insurance that paid 80% of his hospitalization costs, but soon both hospital and plastic surgeon were owed past-due balances. Defendant insurer ultimately provided the funds to pay those balances, in return for which plaintiff executed a release. The most difficult question in this case is the effect of that release.
*222 The release is entitled “RELEASE OF ALL CLAIMS (Open Medical).” It reads:
I Craig Cooperider in consideration of the sum of $1,868.00 . . . release and forever discharge Andrew Dearth and Allstate ... from any and all claims, demands, damages, costs, expenses, loss of services, actions and causes of action, arising from any act or occurrence . . ., and particularly on account of all personal injury, disability, property damage, loss or damages of any kind sustained or that I may hereafter sustain in consequence of an accident that occurred [on December 16, 1977].
But this release does not apply to reasonable expenses up to $750.00 for necessary medical and hospital services which shall be rendered within 180 days after the date of this release to treat injuries received by me in the accident described above.
I understand that the parties hereby released admit no liability of any sort by reason of said accident and that said payment and settlement in compromise is made to terminate further controversy respecting all claims for damages that I have heretofore asserted or that I . .. might hereafter assert because of said accident.
Defendants plead the release as a compromise of all claims; plaintiff testified it was never his intent to settle anything other than his past-due medical bills. In fact plaintiff received no funds for himself but only the exact amounts of the past due medical bills. These circumstances fairly approximate those of Moak v. American Automobile Ins. Co., 242 La. 160, 134 So.2d 911 (1961), and Mooneyhan v. State Farm Mut. A. Ins. Co., 290 So.2d 405 (La.App. 2 Cir. 1974). Following Moak and Mooney-han, we affirm the trial court’s rejection of the plea of compromise.
On liability, we note that the basic facts are that plaintiff was a passenger on defendant driver’s motorcycle; that defendant driver was driving 30 to 35 m.p.h. in fog, a speed he agreed he would not have driven in fog save that he could see the tail light of another motorcyclist 20 to 30 feet ahead of him and thus tell when the road curved, etc. The preceding motorcycle encountered trouble, however, causing its driver to fall to the ground, and defendant driver was forced to veer to his right to avoid running over the preceding driver. Defendant driver never lost control of his motorcycle, but he did go over a high curb, and at some point during these maneuvers plaintiff was thrown from defendant’s motorcycle.
Because plaintiff testified that he did not blame defendant driver, who drove as well as he could under the circumstances, defendants argue their driver was not at fault. The jury no doubt found fault both in excessive speed for the foggy condition and in following too close, and we cannot substitute our inferences for those reasonable inferences of the trier of fact, Canter v. Koehring Co., 283 So.2d 716 (La.1973).
Defendants then argue that the sudden emergency doctrine should excuse their driver. We disagree because the duty to drive at a low speed in fog, and the duty not to follow too close, include within the risks they seek to avert the risk that something unexpected should appear out of the fog, and that one following too close might not be able to bring his vehicle to a normal, reasonably safe stop. The breach of a duty cannot be excused by the occurrence of the very risk that the duty intends to avoid. The only reason the occurrence might be described as “sudden” and “emergency” is that defendant driver was both going too fast and following too close. Defendant driver’s fault did not consist in poor reaction to the emergency but in creating the emergency.
Nor can we conclude that the jury erred in not finding contributory negligence or assumption of the risk on the part of plaintiff. Defendants refer to the fact that both plaintiff and defendant driver had drunk some alcoholic drinks during the evening, but there is no evidence that anyone’s judgment or physical ability was impaired by the alcohol. Defendants further argue *223 that the fog was equally visible to plaintiff and that plaintiff did not complain of either speed or of following too close. But the jury also knew that plaintiff, seated directly behind defendant driver, could not see directly ahead as well as defendant could and thus was not in as good a position as was defendant to evaluate speed and following distance. Finally on this point, defendants argue that plaintiff might have jumped off the motorcycle. We concede that possibility, but it is not as probable as that the jolt of the motorcycle hitting the high curb dislodged him. We cannot say that the jury was clearly wrong in not finding negligence or assumption of risk.
Defendants also argue that $31,000 was an excessive award for the injuries previously described (with some concomitant past and future loss of work). Defendants argue that that award includes at least $27,000 general damages, and that that amount is out of line with prior awards as reviewed in Titard v. Lumberman’s Mut. Cas. Co., 291 So.2d 857 (La.App. 3 Cir. 1974), and with Titard itself, which awarded $10,-000 general damages. We observe that, although the plaintiff there had four facial fractures plus a nose fracture, the repair that our plaintiff had to undergo was not present; and we also note that inflation would perhaps have doubled the number of those $10,000 that were awarded for an accident that occurred in June 1969, by the time our accident occurred in December 1977, eight and a half years later. Thus Titard s quantum does not persuade us that our award is excessive. We deem it within the “much discretion” that La.C.C. 1934(3) gives to the trier of fact.
Affirmed.