514 So.2d 614 (1987)
Dorothy Shannon SCHMIDT
v.
John DOE, Claiborne Builders, Inc., et al.
No. CA-6753.
Court of Appeal of Louisiana, Fourth Circuit.
October 7, 1987.
Glenn E. Diaz, Chalmette, for plaintiff-appellant, Dorothy Shannon Schmidt.
Peter A. Feringa, Jr., John F. Olinde, Chaffe, McCall, Phillips, Toler & Sarpy, New Orleans, for defendants-appellees, Claiborne Builders, Inc. and U.S. Fidelity and Guar. Co.
Before GULOTTA, C.J., and GARRISON and WARD, JJ.
*615 WARD, Judge.
The issue in this appeal is whether the parties have entered into a compromise which is a valid basis for an exception of res judicata to a suit for damages.
On August 4, 1984, Dorothy Schmidt's car was struck by a truck belonging to Claiborne Builders, Inc. Upon learning that Claiborne was insured by United States Fidelity and Guaranty Company, Schmidt telephoned USF & G and spoke to Terry Whistler, an adjuster. She told Whistler that her car had been damaged and that she had been injured in the accident. On August 14, Schmidt sent Whistler two estimates of the cost of repairing her car. Schmidt was examined by a doctor for her injuries, and on August 23, she sent Whistler the doctor's bill for $20.00 and a note from the doctor which read:
Re: Dorothy Schmidt
On August 4, 1984 above individual involved in motor vehicle accident & sustained a mild cervical muscle strain. No structural damage but patient continues with intermittent neck stiffness & pain which is expected to totally resolve.
After another telephone conversation with Whistler, Schmidt received two drafts from USF & G dated August 28, 1984. The first draft, bearing the notation "Property Damage Pymt," was in the amount of $342.36, the lower of the two repair estimates Schmidt had submitted. The second draft, with the notation "Date of Acci./Loss 08/04/84 Loss Pymt," was for $520.00$500.00 more than the doctor's bill which Schmidt had sent to USF & G. Stamped on the back of this draft was the following statement:

RELEASE
In consideration of the payment of this draft the Payee, for himself or as a parent or guardian of an injured minor, hereby releases all claims which the Payee or Injured may have for injuries to the Payee or injured minor resulting from an accident on the date shown on the face of this draft. The Payee, if parent or guardian of injured minor, hereby agrees to indemnify the Insured and/or the Payee under policy referred to on face of this draft for any loss or payment hereafter made on account of any further claim by the injured minor.
After receiving the drafts Schmidt had no further contact with USF & G, but she endorsed and negotiated both drafts.
In the meantime, Schmidt had retained an attorney. She did not, however, tell him about the drafts before she cashed them, nor did she tell USF & G that she was represented by an attorney. On August 2, 1985, Schmidt's attorney filed the present lawsuit against Claiborne Builders, the driver of its truck and USF & G, seeking damages for Schmidt's personal injuries and property damage arising from the August 4, 1984 accident.
This suit was met by the defendants' exception of res judicata, asserting that all of Schmidt's claims had been compromised in August of 1984. The two cancelled USF & G drafts were annexed to the defendants' Exception as evidence of the compromise. After a hearing at which Schmidt and Whistler testified to the facts set forth above and at which Schmidt denied having seen the release statement on the draft and denied an intention to settle her claim, the Trial Judge granted the exception, dismissing Schmidt's action. She appeals.
The issue of the validity of the alleged compromise is governed by our Civil Code.
Art. 3071. Transaction or compromise, definition
A transaction or compromise is an agreement between two or more persons, who, for preventing or putting an end to a lawsuit adjust their differences by mutual consent, in the manner which they agree on, and which every one of them prefers to the hope of gaining, balanced by the danger of losing.
This contract must be either reduced into writing or recited in open court...
Art. 3073. Scope of transaction
Transactions regulate only the differences which appear clearly to be comprehended in them by the intention of the parties, whether it be explained in a general or particular manner, unless it be *616 the necessary consequence of what is expressed; and they do not extend to differences which the parties never intended to include in them.
The renunciation, which is made therein to all rights, claims and pretensions, extends only to what relates to the differences on which the transaction arises.
Art. 3078. Res judicata; error; lesion
Transactions have, between the interested parties, a force equal to the authority of things adjudged. They can not be attacked on account of any error in law or any lesion. But an error in calculation may always be corrected.
The party urging an exception of res judicata based on a compromise has the burden of proving by a preponderance of the evidence the elements of the compromise, including the parties' intention to compromise their differences. Rivett v. State Farm Fire and Casualty Co., 508 So.2d 1356 (La.1987). An endorsed draft can satisfy the requirements of a written compromise, even without the formal release language. Audubon Insurance Co. v. Farr, 453 So.2d 232 (La.1984). It is, nonetheless, up to the insurer to make clear and unequivocal the parties' mutual intention to compromise. Rivett, 508 So.2d at 1360. Parol evidence is admissible to show error which may be the basis of rescinding a compromise. Moak v. American Automobile Insurance Co., 242 La. 160, 134 So.2d 911 (1961).
Schmidt contends that she intended to compromise only her claims for property damage and for medical expenses incurred prior to the date of the drafts; hence, she argues, there was no valid compromise of her personal injury claim because the requisite mutual consent is lacking. In support of this contention, she explained the $500.00 payment in excess of her doctor's bill by testifying that although she did not send any further bills to USF & G, she had incurred close to that amount in additional treatment and medication since the accident.
The USF & G adjuster, Whistler, testified that Schmidt did not tell her that she was continuing to see a doctor, and if Whistler had been so informed, she would not have settled the claim. She testified, however, that before sending the checks to Schmidt, she asked her if $500.00 would "satisfy" or "settle" the claim in excess of the medical bill. Whistler explained that she had arrived at that figure because, "I had a twenty dollar medical bill and basically I assumed that would be just for a checkup after the accident and that was about a two week injury. I thought that was fair." She stated that although standard release forms sent to Schmidt were not returned, she did not follow up on it because of the small size of the claim. She testified that USF & G closed its claim file in September 1984 and that nothing further was heard from Schmidt until the lawsuit was filed eleven months later.
Schmidt relies upon Moak v. American Automobile Insurance Co., supra and Mooneyhan v. State Farm Mutual Automobile Insurance Co., 290 So.2d 405 (La. App. 2nd Cir.1974), cases in which general releases were set aside because the circumstances indicated that the plaintiffs had not intended to fully settle their claims. These cases are factually distinguishable from the instant case. In Moak and Mooneyhan the insurers' payments corresponded exactly with the amount of property or other monetary damages and no payments were made for personal injuries. And, in Mooneyhan, the insurer made payments to the plaintiff after the execution of the purported release. In contrast, Schmidt accepted a payment of $500.00 in excess of the medical expenses she had reported to USF & G, and following acceptance of this payment and the execution of the Release on the back of the USF & G draft, Schmidt and USF & G had no further contact, and USF & G closed its file on the claim.
We conclude that USF & G has proven by a preponderance of the evidence that Schmidt intended to compromise all her claims when she accepted the USF & G drafts, and that compromise is a bar to the present lawsuit. The intent of the parties is a factual determination to be made by the Trial Judge based upon his evaluation of all of the evidence. We find that the *617 evidence, particularly the amount of the drafts and Schmidt's conduct surrounding her receipt of the drafts, amply supports the Trial Judge's conclusion that Schmidt intended to compromise all of her claims against the defendants. Finding no manifest error, we affirm. All costs of appeal to be paid by Dorothy Schmidt.
AFFIRMED.